UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ALAN A. GOLD,**                              Chapter 7
    Debtor                              Case No.  09-13379-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "United States Trustee's Motion to Dismiss Debtor's Chapter 7 Case for Abuse under Section 707(b)(1) and (2)(A) and/or (b)(3)(B)." Alan A. Gold (the "Debtor") opposed the Motion. The Court conducted an evidentiary hearing on December 8, 2014 at which the Debtor and two other witnesses testified.[1] Based upon the evidence presented, the Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The issue presented is whether the U.S. trustee has satisfied his burden that granting relief under Chapter 7 to the Debtor would be an abuse of the provisions of Chapter 7.

**II. FACTS**

The Debtor is a registered nurse employed at Massachusetts General Hospital ("MGH") by Partners Health Care, Inc. He filed a Chapter 13 petition on April 17, 2009.

---

[1] On August 27, 2013, the Court heard the U.S. Trustee's motion and determined that a trial was necessary with respect to evidentiary issues under 11 U.S.C. § 707(b)(3)(B). The Court ruled, however, that the Debtor had rebutted the presumption of abuse under 11 U.S.C. § 707(b)(2).

1

At the time he commenced his Chapter 13 case, the Debtor, as required by the provisions of the Bankruptcy Code, filed Schedules of Assets and Liabilities. The Debtor did not disclose an ownership interest in real property on Schedule A-Real Property or ownership of a motor vehicle on Schedule B-Personal Property; he did not list any holders of secured or priority claims on Schedule D-Creditors Holding Secured Claims or Schedule E-Creditors Holding Unsecured Priority Claims, respectively. He disclosed claims totaling $99,876.98 on Schedule F-Creditors Holding Unsecured Nonpriority Claims. His unsecured debt is primarily consumer debt.

The Debtor initially proposed a Chapter 13 plan with a $1,850 monthly plan payment, which was confirmed without objection on February 3, 2010. From June of 2009 to June of 2010, the Debtor made monthly plan payments of $1,850; he missed one payment in July of 2010, and resumed payments of $1,850 from August of 2010 through October of 2010. The Chapter 13 Trustee subsequently moved to dismiss the Debtor's Chapter 13 case, arguing his plan was not feasible because the proofs of claim on file totaled $106,491, approximately $6,600 more than what the Debtor listed on Schedule F. In response, the Debtor amended his Chapter 13 plan on October 15, 2010 by increasing his monthly plan payment from $1,850 to $2,068 to provide for full payment of his unsecured debt. The Court confirmed his Amended Chapter 13 plan on May 10, 2012.

On March 22, 2013, the Chapter 13 Trustee filed a Motion to Dismiss the Debtor's Chapter 13 case for failure to make plan payments, citing arrears of $14,476, amounting to seven missed plan payments. In addition to the missed monthly plan payment of $1,850, the

Debtor missed monthly payments of $2,068 in December of 2010, in May, October and December of 2011, and in August and October of 2012. The missed payments were over a period of eighteen months. The Debtor testified that he was unaware of them until the Chapter 13 Trustee filed her Motion to Dismiss.

In response to the Chapter 13 Trustee's Motion to Dismiss, the Debtor moved to convert his Chapter 13 case to a case under Chapter 7, which motion was granted on April 15, 2013. In his Motion to Convert, the Debtor asserted that he would not be able to cure the $14,476 in arrears within a reasonable period of time. During his Chapter 13 case, the Debtor made $74,878 in total payments; $69,251.12 was paid to creditors and $5,626.88 was paid to the Chapter 13 Trustee relative to her commission. As a result of his Chapter 13 payments, the Debtor's current unsecured debt is approximately $37,240. Danielle Callahan, Esq., Debtor's counsel during this period, testified that the Chapter 13 Trustee was not receptive to the filing of a further amended plan by the Debtor to cure the arrears. According to Attorney Callahan, the Chapter 13 Trustee considered the Debtor's proposed amended plan a modification under 11 U.S.C. § 1329 that would be unwarranted because the Debtor did not experience any change in circumstances.

A comparison of the Debtor's income and expenses as reported on Schedules I and J-Current Income and Expenditures of Individual Debtor(s) filed with his original Chapter 13 petition and on amended Schedules I and J filed on June 20, 2013 following conversion of his Chapter 13 case to a case under Chapter 7 is instructive.

| Income | Reported April 17, 2009 | Reported June 20, 2013 | Difference |
|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ 11,910.37 | $ 12,032.37 | + $ 122.00 |
| 2. Estimate monthly overtime | $ 0.00 | $ 0.00 | |
| 3. SUBTOTAL | $ 11,910.37 | $ 12,032.37 | + $ 122.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | |
| a. Payroll taxes and social security | $ 3,944.77 | $ 4,573.83 | + $ 629.06 |
| b. Insurance | $ 0.00 | $ 0.00 | |
| c. Union dues | $ 0.00 | $ 0.00 | |
| d. Other (Specify) See Detailed Income Attachment | $ 666.44 | $ 726.74 | + $ 60.30 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ 4,611.21 | $ 5,300.57 | + $ 689.36 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 7,299.16 | $ 6,731.80 | - $ 567.36 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ 0.00 | $ 0.00 | |
| 8. Income from real property | $ 0.00 | $ 0.00 | |
| 9. Interest and dividends | $ 0.00 | $ 0.00 | |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ 0.00 | $ 0.00 | |
| 11. Social security or government assistance (Specify): | $ 0.00 $ N/A<br>$ 0.00 $ N/A | $ 0.00<br>$ 0.00 | |
| 12. Pension or retirement income | $ 0.00 | $ 0.00 | |
| 13. Other monthly income (Specify): | $ 0.00 | $ 0.00 | |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ 0.00 | $ 0.00 | |

| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ 7,299.16 | $ 6,731.80 | - $ 567.36 |

With respect to the Debtor's income, Ms. Linda Rogers ("Ms. Rogers"), a bankruptcy analyst in the Office of the U.S. trustee, testified that the Debtor's payroll deductions as set forth on amended Schedule I were overstated. Using pay advices from the Debtor's employer from December 23, 2012 through April 13, 2013, she indicated that the payroll taxes were 33%, not 38%, of the Debtor's wages, resulting in average monthly income of $7,408.14, such that the Debtor's monthly income on Amended Schedule J was understated by $674.34. If the pay advices from December 2, 2012 through December 21, 2013 are used, Ms. Rogers testified that the Debtor's average monthly income was $7,456.78, resulting in an understatement of $724.98.

The Debtor prepared and filed Form 1040 Federal income tax returns and Form 1 Massachusetts resident income tax returns for 2009 through 2012. According to the Debtor's 2009 Form W-2 and 1040 Federal income tax return, he claimed wages of $127,428 and listed no dependents in 2009. According to the Debtor's 2010 Form W-2 and 1040 Federal income tax return, he claimed wages of $135,399 and listed no dependents in 2010. According to the Debtor's 2011 Form W-2 and 1040 Federal income tax return, he claimed wages of $130,602 and listed no dependents in 2011. According to the Debtor's 2012 Form W-2 and 1040 Federal income tax return, he claimed wages of $135,261 and listed no dependents in 2012. Finally, according to the Debtor's 2013 Form W-2, he earned wages of $136,918.22 in 2013.

The following table compares the Debtor's expenditures in 2009 and 2013.

| Expenditures | Reported April 17, 2009 | Reported June 20, 2013 | Difference |
| --- | --- | --- | --- |
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ 2,050.00 | $1,850.00 | - $ 200.00 |
| a. Are real estate taxes included? Yes No X | | | |
| b. Is property insurance included? Yes No X | | | |
| 2. Utilities: | | | |
| a. Electricity and heating fuel | $ 150.00 | $ 150.00 | |
| b. Water and sewer | $ 0.00 | $ 0.00 | |
| c. Telephone | $ 70.00 | $ 130.00 | + $ 60.00 |
| d. Other Cable/internet | $ 100.00 | $ 160.00 | + $ 60.00 |
| 3. Home maintenance (repairs and upkeep) | $ 20.00 | $ 35.00 | + $ 15.00 |
| 4. Food | $ 800.00 | $ 800.00 | |
| 5. Clothing | $ 50.00 | $ 150.00 | + $ 100.00 |
| 6. Laundry and dry cleaning | $ 20.00 | $ 120.00 | + $ 100.00 |
| 7. Medical and dental expenses | $ 100.00 | $ 145.00 | + $ 45.00 |
| 8. Transportation (not including car payments) | $ 50.00 | $ 125.00 | + $ 75.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc | $ 100.00 | $ 160.00 | + $ 60.00 |
| 10. Charitable contributions | $ 0.00 | $ 30.00 | + $ 30.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | | |
| a. Homeowner's or renter's | $ 18.00 | $ 21.00 | + $ 3.00 |
| b. Life | $ 0.00 | $ 0.00 | |
| c. Health | $ 0.00 | $ 0.00 | |
| d. Auto | $ 0.00 | $ 0.00 | |
| e. Other | $ 0.00 | $ 0.00 | |

| | | | |
|---|---|---|---|
| 12. Taxes (not deducted from wages or included in home mortgage payments) (Specify) | $ 0.00 | $ 0.00 | |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | | |
| a. Auto | $ 0.00 | $ 0.00 | |
| b. Other | $ 0.00 | $ 0.00 | |
| c. Other | $ 0.00 | $ 0.00 | |
| 14. Alimony, maintenance, and support paid to others | $ 0.00 | $ 0.00 | |
| 15. Payments for support of additional dependents not living at your home | $ 750.00 | $ 850.00 | + $ 100.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0.00 | $ 0.00 | |
| 17. Other Personal Care | $ 100.00 | $ 220.00 | + $ 120.00 |
| Other | $ 0.00 | $ 0.00 | |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ 4,378.00 | $ 4,946.00 | + $ 568.00 |

Pursuant to Schedules I and J, the Debtor's monthly net income was $2,921.16 in April of 2009 and $1,785.80 in June of 2013, despite the Debtor's increased earnings. The Debtor admitted that his withholding taxes on amended Schedule I were overstated.

The U.S. trustee timely filed a notice that the Debtor's Chapter 7 case was presumed to be an abuse and timely filed the Motion to Dismiss. He attached to his motion and introduced as an exhibit a "Statement of Current Monthly Income and Means Test

Calculation" prepared by a former employee of the Department of Justice and reviewed and adopted by Ms. Rogers, who testified as to its preparation at trial. The Form 22A prepared by the U.S. trustee's office used the facts and information on the Debtor's original Form 22C filed in his Chapter 13 case to show that the presumption of abuse arose in the Debtor's Chapter 7 case. It shows that the Debtor's current monthly income is $11,910.37; his annualized income is $142,924.44; and his allowable deductions are $8,134.96. In the U.S. trustee's view, the Debtor has monthly disposable income of $3,775.41.

The Debtor is a citizen of New Zealand and received his Associates Degree in Nursing from Otago Polytechnic, Dunedin, New Zealand in 1989. Prior to employment at MGH in 2002, the Debtor was employed as a registered nurse in Louisiana and California. In his capacity as a registered nurse at MGH, he has worked full-time, forty hours per week, plus periodic overtime, weekend, holiday and/or on-call time, in the Department of Interventional Radiology.

The Debtor has received more than satisfactory performance reviews from his supervisor at MGH and is a valued employee. In addition, as noted above, he routinely received wage adjustments. The Debtor testified that he is entitled to five weeks vacation. The Debtor testified that he is medicated for clinical depression, and he intimated that his depression may have played a role in his failure to make all of his Chapter 13 plan payments, although his ability to perform his duties as a registered nurse is not adversely affected.

The Debtor is in a long-term relationship with Daniel Rico ("Mr. Rico"), a Mexican

national, whom he described as his life partner. Mr. Rico is unable to travel to, or live in, the United States as he is unable to obtain a visa for permanent residency in the United States due to lack of necessary job skills. Mr. Rico lives in the small town of Atlixco and is employed in the retail sector, earning approximately 1,500 pesos per month, which is a minimal wage. The Debtor subsidizes Mr. Rico's income with payments of at least $800 per month. Between June 10, 2012 and August 29, 2013, the Debtor wired Mr. Rico through a Xoom account approximately $14,787. Ms. Rogers calculated that during a 13-month period between March 16, 2012 and April 15, 2013 the Debtor wired Mr. Rico an average of $998.14 per month. The Debtor admitted that he failed to comply with the U.S. trustee's request to provide bank statements for Mr. Rico's Mexican deposit account or documents that show the disposition of the proceeds from his monthly Xoom transfers to Mexico.

The Debtor testified that he has not considered moving to Mexico to be with Mr. Rico because he would not be able to obtain employment as a registered nurse there. In view of the parties' enforced separation, the Debtor testified that he communicates with Mr. Rico several times per day and visits him several times per year. According to the Debtor, Mr. Rico lives in rooming house, and as a result, when the Debtor visits Mr. Rico, they travel beach areas such as Playa del Carmen and Puerto Vallarta for privacy reasons, staying at modestly priced resorts. When the couple travels, the Debtor pays all the expenses, including costs for hotels, car rentals, meals, and entertainment. Indeed, in March of 2013, the Debtor withdrew money from a retirement account in the amount of $9,569 incurring a penalty in doing so, using the proceeds to fund a two-week vacation to visit family and

travel in New Zealand with Mr. Rico.

Ms. Rogers prepared a chart showing her calculations with respect to the Debtor's international travel. During a 13-month period between March 16, 2012 and April 15, 2013, the Debtor spent on average $1,404.79 per month on travel and a total amount of $18,262.22. For the period from April 16, 2013 through December 15, 2013, the Debtor spent a total of $25,098.87 on travel with a monthly average of $1,195.18.

The Debtor incurs monthly expenses of $1,850 for his apartment rental. He also incurs expenses for utilities. The Debtor regularly eats out at restaurants with friends. He testified that he was a member of an informal dinner club in which members rotate picking up the total bill at restaurants. The Debtor also incurs monthly expenses of approximately $200-$350 for wine, and he engages the services of a cleaning company for his apartment, spending approximately $160 per month for those services.

### III. APPLICABLE LAW

Section 707(b)(1) of the Bankruptcy Code provides for dismissal of a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if granting the debtor relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1).[2] As the

---

[2] According to the court in In re Hayes, No. 13-80035, 2015 WL 236275 (Bankr. D.S. Tex. Jan. 16, 2015),

> The cases are split on the question of whether Section 707(b) applies with respect to a case converted from Chapter 13 to Chapter 7. The majority of courts have held that Section 707(b) applies with respect to a converted case. The rationales for the holdings of those courts are 1) that Section 707(b)(1) must be read in light of Section 348(a) of the Bankruptcy Code, which provides that conversion of a case does not change the date of filing of the petition, the commencement of the case, or the order for relief; and 2)


court noted in In re Boule, 415 B.R. 1 (Bankr. D. Mass. 2009), section 707 provides two independent bases for determining whether granting relief under Chapter 7 would be an abuse of the Bankruptcy Code. The first presumption of abuse arises under § 707(b)(2)(A), a situation which is only present if the debtor is an above median income debtor. The alternative basis is set forth in § 707(b)(3) and is applicable where there is either no presumption of abuse or the presumption has been rebutted. It empowers the Court to consider whether the petition was filed in bad faith or whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." Id. at 3.[3] "'Section

---

    that the word "filed," in Section 707(b)(1), rather than the phrase "filed by an individual debtor under this chapter," modifies the word "case." *See* In re Davis, 489 B.R. 478 (Bankr. S.D. Ga. 2013); In re Summerville, 515 B.R. 651 (Bankr. M.D. Fla. 2014); In re Perfetto, 361 B.R. 27 (Bankr. D. R.I. 2007); In re Lassiter, 2011 WL 2039363 (Bankr. E.D. Va. 2011); In re Chapman, 447 B.R. 250 (8th Cir. BAP 2011); and In re Willis, 408 B.R. 803 (Bankr. W.D. Mo. 2009).

    The minority view, followed by one judge in this district [Texas], holds that the plain language of the phrase "filed by an individual debtor under this chapter" in Section 707(b)(1) excludes cases filed by individual debtors under another chapter. *See* In re Pate, 2012 WL 6737814 (Bankr. S.D. Tex. 2012) In re Dudley, 405 B.R. 790 (Bankr. W.D. Va. 2009); In re Fox, 370 B.R. 639 (Bankr.D.N.J.2007); In re Miller, 381 B.R. 736 (Bankr. W.D. Ark. 2008); In re Layton, 480 B.R. 392 (M.D. Fla. 2012), and In re Thoemke, 2014 WL 443890 (Bankr. M.D. Fla. 2014).

    Although, as noted by several of the courts, either reading of Section 707(b)(1) is sensible, this court finds persuasive the rationales advanced by the courts which have determined that Section 707(b)(1) applies in converted cases.

2015 WL 236725 at * 5.

   [3] Section 707(b)(3) provides:

707(b)(2)(A) creates a statutory presumption of abuse in certain circumstances but offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise.'" Id. at 4 (quoting In re Zaporski, 366 B.R. 758, 770 (Bankr. E.D. Mich. 2007)).

Thus, under section 707(b)(3) of the Bankruptcy Code, the Court may dismiss a Chapter 7 debtor's case even if he or she has rebutted the presumption of abuse under section 707(b)(2) if the Debtor filed the petition in bad faith, or if "the totality of the circumstances . . . of the Debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). The party seeking dismissal for abuse bears the burden of proof by a preponderance of the evidence. *See* In re Roppo, 442 B.R. 888, 891-92 (Bankr. N.D. Ill. 2010); In re Perrotta, 378 B.R. 434, 437 (Bankr. D. N.H. 2007). "Once the prima facie case for abuse is established by the UST, the burden of going forward with sufficient evidence to controvert the prima facie case is reposed in the non-moving party, the debtor." *See* In re Perelman, 419 B.R. 168, 178 (Bankr. E.D.N.Y. 2009).

In In re Corridori, No. 10–41645–MSH, 2010 WL 3522122 (Bankr. D. Mass. Sept. 1,

---

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(1) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

12

2010), the court set forth the history of the totality of the circumstances test, stating:

> The totality of the circumstances test as applied by courts prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was carried forward under BAPCPA. In re Boule, 2009 WL 722025 (Bankr. D. Mass. March 18, 2009); In re Lenton, 358 B.R. 651, 664 (Bankr. E.D. Pa. 2006) (citing a pre-BAPCPA Conference Committee Report for a prior draft of § 707(b)(3) that is identical to the version contained in BAPCPA). The First Circuit Court of Appeals in In re Lamanna, 153 F.3d 1, 4 (1st Cir. 1998), a case decided under the more rigorous pre-BAPCPA "substantial abuse" standard, adopted a series of non-exhaustive factors for determining substantial abuse set forth in In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989).

2010 WL 3522122 at *1 (footnote omitted). *See also* In re Riley, No. 09–10096–JNF, 2010 WL 3718017 (Bankr. D. Mass. Sep 14, 2010). The court in Corridori added:

> The December 7, 2000 Conference Committee Report to the Senate, cited in Lenton, provides in relevant part:
>
>> The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in In re Lamanna, 153 F.3d 1 (1st Cir.1998), it is intended that the case should be subject to dismissal under H.R. 2415. Cases which have decided that a debtor's ability to pay should not be considered when determining abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.
>
> Bankruptcy Reform Act of 2000–Conference Report, 146 Cong. Rec. S 11683–02, S 11703 (2000).

13

Id. at *1 n.2. Specifically, in Lamanna, the First Circuit adopted the test for substantial abuse set forth in In re Krohn, 886 F.2d 123 (6th Cir. 1989). Quoting Krohn, it stated:

> In determining whether to apply § 707(b) to an individual debtor, . . . a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.
>
> ***
>
> *Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.* That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Lamanna, 153 F.3d at 4 (quoting Krohn, 886 F.2d at 126-27)(citations omitted, emphasis added).[4]

---

[4] Other courts utilize the following factors:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;
(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
(4) Whether the debtor's proposed family budget is excessive or

Section 707(b)(3) requires the Court to analyze the reasonableness of a debtor's expenses. In In re Nunna, No. 3:13-bk-05379-JAF, 2014 WL 19258233 (Bankr. M.D. Fla. May 13, 2014), the court recognized that "[t]he determination of whether a family budget is excessive or unreasonable is an "'unenviable task.'" Id. at * 6 (citation omitted). It stated:

> There is no bright-line rule for determining what is 'reasonably necessary.' A court should not superimpose its values and substitute its judgment for those of the debtor on basic choices about appropriate maintenance and support. The Court finds that this logic equally applies for purposes of § 707(b)(3). A court should, however, substitute its judgment for that of the debtor when any one of the following additional factors is present: (1) the debtor proposes to use income for luxury goods or services; (2) the debtor proposes to commit a clearly excessive amount to non-luxury goods or services; (3) the debtor proposes to retain a clearly excessive amount of income for discretionary purposes; (4) the debtor proposes expenditures that would not be made but for a desire to avoid payments to unsecured creditors; and (5) the debtor's proposed expenditures as a whole appear to be deliberately inflated and unreasonable.

Id. (citations omitted).

**IV. POSITIONS OF THE PARTIES**

A. The U.S. Trustee

The U.S. trustee contends that the presumption of abuse arises because the Debtor's

---

extravagant;
(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

In re Griffin, No. 13–00574, 2015 WL 350944 at *4-5 (Bankr. D. Alaska, Jan. 22, 2015) (quoting Price v. United States Trustee (In re Price), 353 F.3d 1135, 1139-40 (9th Cir. 2004) (footnote omitted)).

15

monthly disposable income shown on Official Form 22C, Line 59, establishes monthly disposable income of $3,945 and that on Line 50 of the Form 22A "means test" form prepared by the U.S. trustee, the Debtor has monthly disposable income of $3,775, which exceeds the statutory benchmarks. He also notes that it is undisputed that the Debtor has monthly net income of $1,786 available to repay creditors. With respect to the Court's August 27, 2013 ruling that the Debtor "had rebutted the presumption of abuse in his inability to perform under his amended chapter 13 plan and the subsequent amendment of Schedules I and J," the U.S. trustee argues that "the evidence established at trial does not support that ruling and/or reveals otherwise." The U.S. trustee notes that as to all but one of the seven missed amended Chapter 13 plan payments, Mr. Gold testified he was surprised that he was in arrears but he failed to demonstrate any special circumstances and only vaguely referred to expensive utility bills. He adds that the Debtor has an ability to make substantial payments on the balance of his unsecured debt.

The U.S. trustee also maintains that the totality of the Debtor's financial circumstances demonstrates abuse. He points to the Debtor's profession as a registered nurse with commendable performance reviews. He also points to the Debtor's failure to refute the evidence of his spending habits and argues that "the evidence clearly demonstrates that Mr. Gold favors his personal spending habits over payment to his creditors."

  B. <u>The Debtor</u>

The Debtor argues that there have been no allegations that he filed his original Chapter 13 petition in bad faith and no allegations of bad faith in the conversion of his case

16

from Chapter 13 to Chapter 7 by the U.S. trustee. He asserts the sole issue is whether the "totality of the circumstances" demonstrates abuse of the provisions of Chapter 7 of the Bankruptcy Code. In his view, the totality of the circumstances do not demonstrate an abuse of the provisions of Chapter 7.

## V. DISCUSSION

In view of the Court's order of August 27, 2013, the Court shall limit its analysis to dismissal under section 707(b)(3). The Court concludes that the Debtor made a good faith attempt to pay his creditors in his Chapter 13 case. He paid a substantial portion of the debt owed to his creditors, approximately $70,000, leaving a balance of approximately $38,000. His actions in making payments to his creditors while in Chapter 13 reflect his integrity and good faith. Nevertheless, the Debtor, perhaps unaware of the alternative of dismissing his Chapter 13 case and commencing another Chapter 13 case to pay the balance of the claims of his unsecured creditors, elected to convert his case to Chapter 7, despite substantial monthly net disposable income of at least $1,785.80 as reported on his amended Schedules I and J filed on June 20, 2013. The Debtor indicated that he wished to avoid a challenge by the Chapter 13 Trustee to an amended plan because the Chapter 13 Trustee intimated she would object to any proposed modification of his existing confirmed plan. The conversion of his case to Chapter 7, however, triggered the instant Motion to Dismiss as the Debtor's income significantly exceeds his expenses as reported on his Amended Schedules I and J.

The evidence established that the U.S. trustee satisfied his burden under the totality of the circumstances test. *See* 11 U.S.C. § 707(b)(3)(B). The Debtor has the ability to pay the

17

remaining sums owed his creditors out of future earnings, without jeopardizing his support of Mr. Rico or his ability to visit him. The Debtor's ability to pay creditors out of future earnings is the most significant factor in the totality of the circumstances test as set forth in Lamanna. 153 F.3d at 4.

The Court is compelled to conclude that relief under Chapter 7 would be an abuse where the Debtor has substantial net disposable income each month from a stable, secure, and lucrative position at a prestigious hospital. Moreover, the Debtor has no health conditions or disabilities that jeopardize his ability to work. The Debtor expends substantial amounts of money for travel and other items that are not necessities.

The Court is sympathetic to the Debtor's predicament with respect to his relationship with Mr. Rico and hesitates to substitute its judgment for that of the Debtor. *See* In re Nuna, 2014 WL 1925833 at *6. Nevertheless, even if the Court credits the Debtor's testimony with respect to Mr. Rico's financial and living situation, as well as his visa and travel restrictions, the Debtor failed to comply with the U.S. trustee's discovery request to provide bank statements for Mr. Rico's Mexican deposit account and documents that show the disposition of the proceeds from his monthly Xoom transfers to Mexico. The Debtor also admitted that he has never claimed Mr. Rico as an IRS deduction, paid health insurance premiums for Mr. Rico through his work health plan, listed Mr. Rico as a beneficiary of his employer sponsored life insurance policy or employer funded retirement account, listed Mr. Rico as the beneficiary of his savings and checking accounts at East Boston Savings Bank or made provisions for Mr. Rico in his will. Moreover, the Court concludes that the Debtor's

excessive use of his net income for discretionary purposes in lieu of debt repayment is incompatible with the relief he seeks under Chapter 7.

## VI. CONCLUSION

The Court observes that were the Debtor to file another Chapter 13 petition, he could satisfy his outstanding debt of approximately $38,000 in less than 30 months. Where he does not have a mortgage or automobile loan, and where there is no evidence of collection efforts by his creditors in the form of complaints filed under 11 U.S.C. § 523, the Court concludes that a second Chapter 13 petition would not engender litigation under 11 U.S.C. § 362(c)(3) that would hamper relief under Chapter 13. In view of the foregoing and the evidence adduced at trial, the Court grants the U.S. trustee's Motion to Dismiss.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 18, 2015